87 So.2d 47 (1956)
C.E. KOCH, Appellant,
v.
R.H. WICK, Chairman, and C.J. Wood, Clyde J. Keys, C.R. Fischer and S.S. Parry, Members of the Board of County Commissioners of Pinellas County, Florida, also Pinellas County, Appellees.
Supreme Court of Florida. Special Division B.
April 25, 1956.
J.C. Davant, Clearwater, for appellant.
C. Ray Smith, J.D. Hobbs, Jr., and Cramer, Smith & Hobbs, St. Petersburg, for appellees.
THOMAS, Justice.
The appellant was the unsuccessful plaintiff in the chancery court. He owns 2,600 contiguous acres of land in Pinellas County which he claims contain "several hundred million gallons" of percolating water that reaches his land by rainfall, and by seepage from sources near and far rendering the land extremely fertile.
The members of the Board of County Commissioners had conducted a survey of the quality and quantity of available water underlying the lands in that part of the county where appellant's property is situated, found that eight million gallons of potable water could be drawn daily from the area, and named the region "Mecca Well Field." The Board then sank wells on the road right-of-way adjacent to the appellant's property and began to pump water from these wells, but this enterprise was enjoined by the court in an action brought by the appellant to have his rights in the real property and the underlying water declared and to enjoin the Board from use of the right-of-way for any except highway purposes.
Next the Board leased from a neighboring owner a strip of land 60 feet in width and 2,640 feet in length adjoining appellant's property and sank wells from which is drawn a large volume of water for distribution to individuals and to municipalities in Pinellas County including the county seat, Clearwater. The project which, according to the allegations of the complaint, is purely commercial results in draining moisture from his land and will, he charges, reduce its productivity to such degree that it will become a "desert waste" causing him to suffer irreparable injury. He prayed that the operation of the pumps be enjoined and that he be awarded a judgment for the reasonable value of all water taken.
*48 Upon motion of the appellees, the chancellor dismissed the complaint.
The appellant first presents the questions whether or not the Board of County Commissioners should be restrained from pumping daily three million gallons of percolating water from wells situated on 3.63 acres of land solely for resale, not for use on the land, thereby "depleting the percolating water supply" from the adjoining lands, and whether or not the allegations with reference to depletion disclose irreparable damage.
It seems that in judging the merits of this controversy, the appellees are not in a favorable position simply because the water drawn is to be furnished the public. Tampa Waterworks Co. v. Cline, 37 Fla. 586, 20 So. 780, 33 L.R.A. 376; Canada v. City of Shawnee, 179 Okla. 53, 64 P.2d 694. Although the court in the former case was dealing with the diminution or diversion of water from a well defined subterranean stream, while in the instant case the water appellant alleges is being taken is percolating water, the court quoted from Wheatley v. Baugh, 25 Pa. 528, this language [37 Fla. 586, 20 So. 784]: "`percolations spread in every direction through the earth, and it is impossible to avoid disturbing them without relinquishing the necessary enjoyment of the land. Accordingly, the law has never gone so far as to recognize in one man a right to convert another's farm to his own use, for the purposes of a filter.'"
In Cason v. Florida Power Co., 74 Fla. 1, 76 So. 535, L.R.A. 1918A, 1034, the court was considering damage to land by flooding of a stream and commented that the rights in respect of water which percolates through the land of one owner to the land of another are correlative and each is confined to reasonable use of his property as it affects subsurface water passing to or from the land of another.
The opinions expressed in these cases harmonize with the pronouncement in Labruzzo v. Atlantic Dredging & Const. Co., Fla., 54 So.2d 673, 29 A.L.R.2d 1346, that American courts have receded from the old common law rule that an owner had an unrestricted right to draw percolating water from his land and to adopt the rule that the right is bounded by reasonableness and beneficial use of the land. Perhaps, as appellant suggests in his brief, the old rule has been modified because in the development of machinery, electricity has replaced manual power, and the amount of water that may be drawn has increased astronomically. The instant case is an illustration of the need for the modern rule. As we have written, the appellant alleges that the appellees are taking vast quantities of water each day with pumps located on a piece of land less than four acres in area. Obviously it is not produced for the benefit of the owner of the small parcel so one of the restrictions, benefit, disappears. It remains to be decided whether or not appellees' operation is reasonable, or to be more accurate, whether the appellant should be allowed to try that issue.
In Canada v. City of Shawnee, supra, the Supreme Court of Oklahoma not only decided that a municipality would be held to the same rule as an individual but also that subterranean waters are presumed to be formed by percolation unless an underground stream is shown to exist.
Appellees take the position that appellant is not entitled to relief unless he "makes a clear showing in his complaint that irreparable injury will result * * * from the pumping operations," and they contend that the "`reasonable use' rule does not per se prohibit extraction of percolating water for distribution and sale off the premises." To sustain their position they cite a decision of the Supreme Court of New Jersey, Meeker v. East Orange, 77 N.J.L. 623, 74 A. 379, 25 L.R.A.,N.S., 465. But in the New Jersey case the action was for damage already done, while here the plaintiff is attempting to prevent the injury to his land.
Inasmuch as the matter of benefit to appellees is eliminated, the sole remaining question is whether or not the extracting of so much water is reasonable. We *49 think that in the face of the pleadings the appellant should have been given the opportunity of producing evidence to substantiate his charge that it was not. And we do not think that this is such a case as would require the denial of remedy until such time as the damage could be ascertained. If the land should become barren, as the appellant fears, the damage to that point could be established but future damage would require an exploration into the obscure and the speculative. It would be just to try now the issues that may be formed by answer to the allegations of the complaint.
The decree is reversed with directions to reinstate the complaint and to proceed from that point.
Reversed.
DREW, C.J., ROBERTS, J., and PRUNTY, Associate Justice, concur.