MATTIE L. MERCER, *et vir,* v. IDA M. KEYNTON, *et al.*

163 So. 411.
Opinion Filed September 27, 1935.
Rehearing Denied October 16, 1935.

*Clark & Ellis,* for Appellant;
*Frank Smathers* and *T. E. Price,* for Appellees.

TERRELL, J.—In June, 1930, appellant, Mattie L. Mercer, joined by her husband, J. H. Mercer, exhibited her bill of complaint in the Circuit Court of Dade County, against appellees, Ida M. Keynton and her husband, A. J. Keynton, and Robert J. Garlick, to enforce the building restrictions and abate the nuisance resulting from the construction and operation of a gasoline filling station on Lot 1, Block 2, Bayonne Subdivision of Miami, Florida, the plat thereof being recorded in the office of the Clerk of the Circuit

Court of Dade County in Book 2 of plats at page 35. The bill contains a prayer for general and specific relief. A demurrer and exceptions to the bill were overruled and on final hearing the cause was dismissed. This appeal is from the final decree.

The first question argued in this Court may be thus stated: Are building restrictions valid and binding upon the owner of real property who purchased with actual or constructive notice of such restrictions and are they enforceable in equity in an action against the owner by the adjoining owner who purchased relying on such restrictions?

The record disclosed that Lot 1, Block 2, Bayonne Subdivision of Miami, was formerly a part of Lot 9, Samuel Filer's subdivision of Dade County, that said Lot 9 was owned by R. C. Gardiner and that R. C. Gardiner and the owners of Lot 8 in Samuel Filer's Subdivision of Dade County made an agreement to combine and subdivide the said lots into a new subdivision to be known as Bayonne. This agreement was recorded May 20, 1912, in Deed Book 87, at page 247, of Dade County, and among other things provides as follows:

"It is furthermore understood and agreed that the plat showing the width of the lots, the depth of the lots, and the location of the building line shall be a part of this agreement; that not more than one dwelling house shall be built on any one lot and no house shall be built for more than one family, and that no dwelling house shall be erected upon any lot facing North and South nearer than thirty-five feet to the front line of said lot, and each house shall be built in the center of the lot from the East to West upon which same is situated; no dwelling house shall be built upon any lot in Bayonne Subdivision that shall cost less than $2,000.00."

In December, 1923, Ida M. Keynton entered into an agreement with R. C. Gardiner to purchase Lot 1, Block 2, Bayonne Subdivision, and immediately went into possession of it. The contract from Gardiner to Mrs. Keynton contained the following provision;

"It is agreed and understood that the parties of the first part are to include in said deed above provided for no restrictions whatsoever except such restrictions as are set forth on the plat of Bayonne Subdivision as recorded in Plat Book 2, page 35, of the records of Dade County, Florida, and such restrictions as are contained in former deeds of conveyance covering the above described land."

In December, 1927, Mattie L. Mercer purchased Lot 2, Block 3, Bayonne Subdivision, and went into possession of it in February, 1928. She has continued to occupy same as her home. Both Lots 1 and 2 had dwelling houses on them when purchased. In 1925 the City of Miami constructed an one hundred foot boulevard from Thirteenth Street south to Fifty-fourth Street north, which resulted in the condemnation and acquirement by the city of all of Mrs. Keynton's lot except twenty feet on the west side. In 1927, after this acquisition by the city, Mrs. Keynton moved the dwelling house on her lot forty-five feet to the south end, and in March, 1928, commenced the construction of a two-story, concrete block building thereon which since its completion has been used as a filling station under lease to the defendant, Garlick. The filling station covers the entire north end of Lot 1, Block 2. The first story contains the usual equipment for a gasoline filling station and the second story is used for an office.

In April, 1928, Mattie L. Mercer brought a suit in equity to enjoin the erection of said filling station on the ground that it violated the building restrictions and detracted from

the value of her lot. The application for temporary restraining order was denied without prejudice, which decree on appeal to this Court was affirmed. Mercer v. Keynton, 99 Fla., 914, 127 So. 859.

In affirming the decree denying the temporary restraining order we held that the defendants had constructive notice of the restrictive covenants because they were contained in the recorded muniments of title and that being of record in the chain of title they could be enforced in appropriate proceedings duly and timely taken. We further held that, "* * * in view of the delay of the complainants in bringing the suit until the construction of the building had progressed so far as to make it inequitable to grant an injunction unless a nuisance is developed, and in consideration of the available remedy by an action at law for damages to the complainants proximately resulting from a breach of the restrictive covenants that are binding on the defendants and not waived or abandoned, the order denying an injunction without prejudice to the legal or equitable rights of the complainants, is affirmed."

After the rendition of said judgment Mattie L. Mercer brought a common law action against Ida M. Keynton to recover damages for the breach of the restrictive covenants. This resulted in a judgment for the defendant on demurrer which went to the sufficiency of the declaration. Said judgment was on appeal affirmed by this Court. Mercer, et al., v. Keynton, 104 Fla. 730, 140 So. 796. We further held that a lot owned could not recover for another's breach of restrictive covenants where defendant holding under common grantor was not privy to the contract.

The foregoing cases of Mercer v. Keynton, reported in 99 Fla. 914, and 104 Fla. 430, would appear to conclude all the questions raised in this case except the question of

whether or not the garage constructed by Mrs. Keynton and the manner of its conduct results in a nuisance to appellant and her property. The bill of complaint is not materially different in this case from that exhibited in Mercer v. Keynton, 99 Fla. 914, 127 So. 859, and we assume that the declaration in Mercer, *et al.,* v. Keynton, 104 Fla. 730, 140 So. 796, was as strong as it could be made.

In Mercer v. Keynton, reported in 104 Fla. 730, we did not hold that the restrictive covenants were binding on the defendant. We held that a breach of such covenants that are binding may be redressed at law according to their terms. In Mercer v. Keynton, reported in 99 Fla. 914, we refused in effect to enforce the restrictive covenants because the complainant waited too long to seek her remedy, that is to say, she was guilty of laches. The rule as announced in that case would control here but it would not necessarily affect the complainant's common law remedy if one is available.

The question of whether or not the construction of the garage complained of and the manner of its conduct results in injury and is a nuisance to appellants and their property and if so can it be compensated for in this proceeding turns on the state of the pleadings and the degree of the proof.

The bill of complaint alleges facts sufficient to constitute the garage a nuisance and a damage to appellant's property and prays that it be abated and enjoined and that the defendants be restrained from further operating it. It also prays for general and specific relief.

The special master who was appointed by agreement of the parties to take testimony and report his findings found that the court had jurisdiction of the cause and the parties, that the building restrictions were binding on the defend-

ants, that the plaintiff was entitled to compensation for specific damages to her property in the sum of $5,626.00, but no finding was made as to the abatement of the nuisance. Both parties excepted to the master's report, the defendant's exceptions were allowed, the plaintiffs were denied, and the bill was dismissed.

An owner or occupant of property must use it in a way that will not be a nuisance to other owners and occupants in the same community. Anything which annoys or disturbs one in the free use, possession, or enjoyment of his property or which renders its ordinary use or occupation physically uncomfortable may become a nuisance and may be restrained. Henderson v. Sullivan, 159 Fed. 46; Bohan v. Port Jarvis Gas-Light Co., 122 N. Y. 18, 25 N. E. 346; Huddleston v. Burnett, 172 Ark. 216, 287 S. W. 1013; Wright v. Lyons, 224 Mass. 167, 112 N. E. 876; Prendergast v. Walls, 257 Pa. 547, 101 Atl. 826; State, *ex rel.* National Oil Works of La. v. McShane, 159 La. 723, 106 So. 252.

The law is well settled that a gasoline filling station is not a nuisance *per se*. In this case appellants apparently concede that the station is carefully constructed and prudently operated but insist that the noises, odors, and inconveniences incident to its conduct necessarily constitute it a nuisance in law. There was much conflicting evidence on this point but the chancellor held contrary to the contention of appellants and his decree finds ample support in the record.

The final decree of the chancellor was evidently predicated on what he considered a lack of power on his part to enter a decree for damages to appellant's property in a chancery cause and for failure of the whole record, in his

judgment, to show that the filling station and the manner of its conduct constituted a nuisance to appellant's property.

The rule is that equitable and purely legal demands cannot be joined in the same equity suit. If, however, the legal demand is incidental to equitable relief and is averred and proven along with the equitable demand it may be determined in a court of equity. Independent legal claims cannot be determined in a court of equity. Leesburg State Bank, et al., v. Roger B. Lyle, 99 Fla. 535, 126 So. 791; Levitt v. Axelson, 102 Fla. 233, 135 So. 553.

The bill of complaint in this case prays that the building restrictions be enforced and that the filling station be decreed to be a nuisance and abated. It does not pray for compensation but contains a prayer for general and special relief. Under the 1931 Chancery Act this was sufficient to award damages that were shown to be incidental to the equitable relief prayed for.

The theory of the special master with respect to damages was apparently the correct one. The judgment below is accordingly reversed with directions to the chancellor to examine the report of the special master and award all or such part of the damages that complainant was found to have suffered as to him may seem legal and proper.

Reversed.

WHITFIELD, C. J., and BROWN, BUFORD, and DAVIS, J. J., concur.